UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | |
|---|---|
| E-Z-GO (a division of TEXTRON INC.) and TEXTRON INNOVATIONS INC, <br><br> Plaintiffs, <br><br> v. <br><br> CLUB CAR, INC., <br><br> Defendant | CASE NO:   1:09-CV-00119 |

**CLUB CAR'S REPLY BRIEF IN FURTHER SUPPORT OF ITS MOTION TO STAY LITIGATION PENDING REEXAMINATION OF THE PATENT-IN-SUIT**

**I.     INTRODUCTION**

Plaintiffs E-Z-GO (a division of Textron Inc.) and Textron Innovations, Inc. (collectively, "Textron") oppose Club Car's Motion to Stay with unreliable sources, out-of-context citations and over-the-top adjectives. Rather than being "impetuous" or "extraordinary" (words used cavalierly by Textron), the Motion seeks common, and commonsense, relief. Motions for stay under these circumstances are routinely granted, and there is no reason for this Court or the parties to waste valuable time and resources litigating central issues in this case when those issues will likely change significantly or even become entirely moot.

Specifically, awaiting the U.S. Patent and Trademark Office's ("PTO's") reexamination of the patent-in-suit will streamline the litigation *regardless of how the PTO rules*. If the PTO invalidates the claims at issue, this litigation will go away entirely. That happens 54% of the time. If the PTO modifies the claims, which happens another 40% of the time, the parties and the Court will benefit from the PTO's expertise and not have wasted time and effort litigating

infringement of claims that were subsequently modified.  Even if the PTO confirms the claims at issue, which happens the final 6% of the time, this litigation still benefits because Club Car will be estopped from relitigating the patent validity issues decided by the PTO.

Against these decided advantages to staying the litigation, Textron asserts that it will face undue prejudice because of the time it will take for the PTO to decide the reexamination.  Textron, however, offers only assertions of prejudice, not evidence of prejudice.  Perhaps more importantly, Textron's assertions are wrong.  Most glaringly, Textron asserts throughout its brief that it will suffer undue prejudice because a stay will allow Club Car to compete in the "A/C drive low-speed vehicle product segment."  But Textron's repeated reference to the A/C motor market is an irrelevant distraction, as no claim of the patent-in-suit mentions an A/C motor.  In any event, Textron's assertions of prejudice amount to nothing more than complaints about how long reexaminations take and even those complaints are based on a wholly unreliable and authorless "report."

The benefits of a stay outweigh Textron's bald assertions of undue prejudice.  Club Car's motion should be granted.

## II.   ARGUMENT

Textron agrees on the three factor test utilized to decide motions to stay pending patent reexamination.  *See* Textron Br. at 5.  As set forth by Judge Wood in *YKK Corp. of America, Inc., v. Silver Line Building Prods. Corp.*, No. CV 305-155 (S.D. Ga. May 14, 2007) (Order staying all proceedings pending PTO reexamination ("YKK Order")), the factors are: "(1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to either party."  YKK Order at 16 (citations omitted).  Judge Wood noted "'[the] liberal policy in favor of granting motions to stay

proceedings pending the outcome' of re-examination," particularly in cases such as this where there has been no discovery. YKK Order at 15 (quoting *ASCII Corp v. STD Entm't USA, Inc.*, 844 F. Supp. 1378, 1381 (N.D. Cal 1994)). As in *YKK*, application of the three factor test to the current motion militates for a stay.

### A.  This Litigation is at its earliest stage.

The first factor, whether discovery is complete and whether a trial date has been set, weighs decidedly in favor of a stay. This Court, and the parties, have invested next to no time or expense in this litigation. Discovery has not yet begun and a schedule has not yet issued. Textron does not dispute these facts, but instead points to non-precedential cases from other districts in which a stay was denied even though the litigation had just begun. Textron Br. at 12-13. But those cases do not deny the weight this factor commands. Stays were granted in those cases simply because of other unique circumstances unrelated to the early the stage of the litigation. Indeed, the cases cited by Textron agree that the early stage of a case weighs in favor of a stay. *See Esco Corp.*, 2009 WL 3078463 at *2 ("[T]he requested stay is being sought early in the litigation when no substantive proceedings have taken place and no deadlines have been scheduled. Thus, the Court finds that [this] factor militates in favor of a stay."); *Biax Corp.*, 2007 WL 614187 at *2 ("This suit is in the early stages…. Accordingly this factor weighs in favor of a stay."); *Robbins*, 2009 WL 2170174 *2 ("This litigation is in its early stages. Thus, this factor weighs in favor of a stay."); *Sorensen v. Ampro Tools Corp.*, 2009 WL 605831 at *2 ("Discovery in this case is in its early stages and no trial date has been set. Thus this factor would normally weigh in favor of a stay."). So while the first factor may not be dispositive, there is no other way to interpret it than in support of the motion to stay the litigation. *See* YKK Order at 16 (staying case in part because the case was in "its nascent stages; discovery ha[d] not even begun.").

**B.      A stay would simplify the litigation and be advantageous to the parties and the Court.**

The second factor, whether a stay would simplify issues in question and trial of the case, similarly weighs in favor of a stay. In Club Car's opening brief, it listed five benefits of a stay to the Court and litigants as described by Judge Wood in *YKK*, including that the Court's ultimate resolution of the issues would be "facilitated by the expert view of the PTO." Club Car Opening Br. at 4-5. Yet Textron does not directly address any of those five benefits, preferring to argue against the straw man that Club Car is relying upon "speculative" statistics regarding the cancellation of claims during reexamination. Textron Br. at 11. While it is true that the cancellation of claims would stop this case dead in its tracks and render worthless whatever effort the parties and the Court expend to that date, that is not the entirety of the argument at all. Indeed, regardless of what the PTO does, this litigation stands to be streamlined and trial stands to be simplified.

The first, and statistically most likely, possible result of the reexamination is the cancellation of all claims of the patent-in-suit. That happens 54% of the time during *inter partes* reexamination. Declaration of Thomas S. Reynolds II, dated December 7, 2009 ("Reynolds Decl."), Ex B. That result would mean that the claims asserted against Club Car are invalid, and therefore cannot be infringed – and this case would go away entirely. Denying a stay and proceeding with the litigation in parallel with the PTO's reexamination thus presents the significant risk that everything done in the litigation will have been for naught.

The second possible result of the reexamination is the modification, but not complete cancellation, of some of the claims of the patent-in-suit. That happens 40% of the time during *inter partes* reexamination. Reynolds Decl., Ex B. Absent a stay, that result would mean that the parties and the Court would have to start over – no matter the stage of the case. New claims

mean new claim construction and new infringement assertions.  Staying the litigation and allowing the PTO to provide its analysis of the claims, on the other hand, would "facilitate trial of [claim validity] by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding)." *Gould v. Control Laser Corp.,* 705 F.2d 1340, 1342 (Fed. Cir. 1983), *cert. denied,* 464 U.S. 935 (1983).  That is even more true in this case, where the eight pieces of prior art that form the basis for the reexamination petition have not previously been considered by the PTO.  Reynolds Decl., Ex. A.

The final possible result of the reexamination is the confirmation of all the claims without material modification.  That happens 6% of the time during *inter partes* reexamination.  Reynolds Decl., Ex B.  Significantly, even in that event this litigation and trial would be simplified if the case was stayed.  That is because Club Car will be estopped from relying upon any prior art that it raised *or could have raised* during the *inter partes* reexamination.  *See* 35 U.S.C. § 315(c).

Textron's argument that Club Car would not be so estopped is either wrong or misleading.  Textron cites to *ESN, LLC v. Cisco Sys., Inc.*, No. 5:08-CV-20, 2008 WL 6722763, at *4 for the proposition that "although defendant will be estopped from asserting at trial publications disclosed to the PTO in reexamination, alleged prior art products not cited will still be at play at trial."  The reason that statement is technically true is that *physical products,* as opposed to patents and publications, cannot be submitted to the PTO during an *inter partes* reexamination.  Defendants in *ESN*, for example, had already submitted invalidity charts listing over 100 prior art *products* but only 13 prior art *publications*.  2008 WL 6722763, at *4.  In that case, the estoppel benefit was necessarily diminished because it only applied to the prior art *publications*, not the prior art *products*.  That is not the case here.

Finally, these advantages of a stay pending *inter partes* reexamination can be obtained at a fraction of the cost of a trial. While the median cost for a patent infringement suit with between $1 and $25 million at stake is $2.5 million, the total cost for *inter partes* reexamination is about $150,000, inclusive of appeals through the federal court. American Intellectual Property Law Association, *Report of the Economic Survey 2007*, July 2007 at 25-27. Especially given the 94% likelihood that this case will terminate or be significantly altered during reexamination, a stay should issue.

      C.      **<u>Textron has not demonstrated any undue prejudice.</u>**

Textron's opposition to a stay relies almost entirely on the third factor: whether a stay would unduly prejudice or present a clear tactical disadvantage to either party. Textron claims it will be unduly prejudiced by a stay of litigation because of the amount of time reexamination proceedings take. It claims that a stay will allow Club Car to compete in the A/C drive low-speed vehicle product segment and that evidence concerning Club Car's infringement will be lost during the time reexamination occurs. As shown below, these arguments are wrong and rely on unreliable information with no evidentiary support. They also, however, put the cart before the horse by presuming validity and infringement of the patent-in-suit. But those issues are the very issues that need to be decided in any litigation. They are also the very issues that can be focused on or avoided entirely by a stay. Textron has not shown the requisite prejudice.

Underlying Textron's entire prejudice argument is its claim that the *inter partes* reexamination will take between 3 ½ and 6 ½ years, a time period it calls "extraordinary" and with which it notes its apparent surprise with three exclamation points. Textron Br. at 1-2, 5-6. It would indeed be surprising, if Textron had not sought out the most overblown statistics it could find. Textron chose to cite solely to a report from the "Institute for Progress" entitled "Reexamining *Inter Partes* Reexam." Textron Br. at 6, citing Isackson Decl., Ex. 1, and cases

- 6 -

citing the Institute for Progress report.  The report is unsigned and its authors are otherwise undisclosed.  It does not list a publisher or a date published.  And it does not provide any detailed analysis of why its numbers differ from the Federal Government's numbers, as reported by the PTO.  *See* Reynolds Decl., Ex. B.  The website for the Institute for Progress is still "under development," and does not list its members or its activities, although a "more public" announcement of the Institute's "fellows" and their "activities" is expected in the future.  The report is simply unreliable, and should be accorded no weight whatsoever.

Textron's choice of unreliable statistics stands in stark contrast to the U.S. Patent Office's own published statistics, as cited in Club Car's opening brief, which report a median pendency of 32.4 months for *inter partes* reexaminations.  *See* Reynolds Decl., Ex. B.  That shorter time comports with the realities of the one case from this district in which a stay (albeit an *ex parte* stay) was granted pending reexamination.  In *YKK,* a stay was ordered on May 14, 2007.  YKK Order.  The final reexamination certificate was issued on October 9, 2007, just five months after the stay issued and just 22 months after the reexamination was requested.  *See* Declaration of Thomas S. Reynolds II, dated January 6, 2010 ("Reynolds Decl. II"), Exhibit A.  Whatever time it takes to complete an *inter partes* reexamination, citations to statistics for *all inter partes* reexaminations cannot support a finding of undue prejudice *in this case*.[1]  Textron's position is an indictment of any stay pending any *inter partes* reexamination and it is simply not the case that all stays are *de facto* unduly prejudicial.  "[T]he delay that *invariably will be occasioned* by the requested stay [does not] outweigh the advantages to this litigation that will result from the

---

[1] By statutory mandate the PTO handles all reexaminations with "special dispatch." 35 U.S.C. §§ 305 and 314.  In particular, the PTO gives priority to those reexamination cases involved in litigation over all other cases.  MPEP § 2661. The PTO was notified of this pending litigation in Club Car's request for reexamination of the patent-in-suit. *See* Reynolds Decl., Ex. A.

PTO's ultimate determination." *Bausch & Lomb, Inc. v. Rexall Sundown, Inc.*, 554 F. Supp.2d 386, 390 (W.D.N.Y 2008) (emphasis added).

Nor has Textron demonstrated prejudice specific to it, as opposed to any litigant who believes that its patent is valid and infringed. Textron first points to the fact that it and Club Car are competitors in the low-speed vehicle industry, and suggests that this fact alone indicates that it will suffer prejudice because of a stay. Textron Br. at 7-8. Of course, the fact that competitors are suing each other is a hallmark of patent litigation. The fact that the parties here are competitors is thus hardly unique, and therefore does not support a finding of *undue* prejudice.

Textron attempts to overcome this lack of prejudice with the assertion that the low-speed vehicle industry is a "highly competitive market segment" and peppers its brief with reference to its supposedly innovative A/C drive train products. These more specific claims regarding the market competition and the supposed demand for A/C products are not supported at all; they are just attorney assertions. Moreover, at least with respect to the A/C drive train, it simply cannot be the case that a stay will prejudice Textron's introduction of such products. That is because, for all its talk about these A/C products, neither the words nor the concept of such products appears in the claims of the patent-in-suit. Indeed, the patent claims relate to controlling electrical motors, period. There are no claims directed at A/C electric motors.[2]

Textron's next argument for its alleged undue prejudice is simply a rehash of its discredited position that *inter partes* reexaminations take too long. This time, Textron couches its argument in an unwarranted attack on Club Car's motives for moving for a stay, calling it a "dilatory tactic." Textron Br. at 8-10. The basis for the attack is Club Car's alleged delay in seeking reexamination. But as can be seen from the timeline outlined by Textron's itself, there

---

[2] This claim of prejudice also ignores the fact that any damages suffered by Textron will continue to accrue during the pendency of the stay. *See Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 603 (Fed. Cir. 1985) (noting that a patent holder may recover damages from an infringer sustained during PTO reexamination).

was no undue delay. *Id.* Textron first alleged infringement in a June 2009 letter. In response, Club Car both denied infringement and pointed out that the patent was invalid. The parties went back and forth until Textron finally served its complaint in this action in November, 2009. Subsequent to being served with the Complaint, the parties met and Club Car shared a draft of the reexamination petition. To facilitate a meeting between the parties, Club Car further agreed with Textron's request that Club Car would not file the reexamination prior to the date Club Car filed its response to Textron's Complaint. *See* Reynolds Decl. II, Exhibit B. The parties mutually agreed that that date would be set for December 7, 2009. *Id*. After the parties met and it was clear the dispute would not be resolved, Club Car filed the reexamination, its Answer to the Complaint, and this Motion to Stay on the first possible day it was able to according to the agreement of the parties – December 7, 2009. *Id*. Indeed, it was Textron that requested Club Car wait until December 7, 2009 to file the reexamination. *Id*. It is hard to swallow Textron's allegation that Club Car was dilatory in filing the reexamination when the date Club Car filed the reexamination was chosen by Textron.

Textron's final argument that it will suffer undue prejudice is that any delay might mean that "witnesses and crucial evidence will be lost." Textron Br. at 10-11. Again though, there is nothing unique about this case – the argument is generic to any stay. In fact, one argument Textron makes, that evidence concerning secondary considerations of non-obviousness might be lost, is actually of diminished importance in this case. As set forth in the petition for *inter partes* reexamination, the vast majority of Club Car's invalidity arguments are arguments that the patent-in-suit was anticipated under 35 U.S.C. § 102, *not that it was obvious*. Secondary considerations of non-obviousness will simply not be very relevant to Club Car's invalidity case – if Club Car ever has to make its invalidity case in this litigation. In addition, any legitimate

concern about loss of evidence has already been ameliorated by the pendency of this litigation as the parties are under a current obligation to preserve evidence, an obligation Club Car takes seriously.

In the final analysis, Textron cannot point to any real and unique prejudice. Its arguments amount to little more than an unreliable claim that a stay will take too long. But that claim simply does not outweigh the real and decided advantages of a stay.

### D. This Court can issue a stay now.

The advantages of a stay, particularly the conservation of judicial and party resources, are only made greater if the stay is granted now, even though the PTO has not yet ruled on the petition for reexamination. Textron's arguments that the motion is premature, especially its suggestions that a stay is prohibited by statute before the PTO has decided whether to grant a reexamination, are flat wrong. The Court's inherent power to control its own docket includes the power to stay proceedings pending the outcome of reexamination proceedings before the PTO. YKK Order at 15 (citing *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988)). That inherent power can be exercised before the PTO has decided to take up the reexamination. *Constellation IP, LLC v. The Allstate Corp.*, No. 5:07-CV-132, 2008 WL 4787625, at *4 (E.D. Tex. May 12, 2008) (granting a stay before a PTO decision on whether to reexamine); *Pactool Int'l Ltd. v. DeWalt Indus. Tool Co.*, No. C06-5367BHS, 2008 WL 312677, *2 (W.D. Wash. Feb. 1, 2008) (same).

Textron relies upon 35 U.S.C. § 318 to argue that the instant motion is "premature." In advancing this argument, not only does Textron trumpet irrelevant law, Textron misstates the law as well. Textron asserts that "the Patent Act explicitly states that a stay of pending litigation may only be obtained '[o]nce an order for *inter partes* reexamination *has been issued*….'" Textron Response Br. at 3 (quoting 35 U.S.C. § 318 (italicized emphasis in original, underlined

emphasis added)).  But 35 U.S.C § 318 does not apply to the instant motion.  Section 318 is a statutory provision that provides that "the *patent owner* may obtain a stay of any pending litigation which involves an issue of patentability of any claims of the patent which are the subject of the inter partes reexamination order." 35 U.S.C § 318 (emphasis added).  Textron's reliance upon Section 318 and cases ruling upon Section 318 is misplaced because Club Car is not the patent owner of the patent-at-issue – Textron is.

Furthermore, Textron's claim that "the Patent Act explicitly states that a stay of pending litigation may *only* be obtained" once a reexamination request has been granted is patently false.  See Textron Br. at 3.  Incredibly, Textron does not cite the full text of 35 U.S.C. § 318, but offers a paraphrase that alters the meaning entirely.  So not only does Textron omit the key provision of that section that makes it clear that it applies to patent owners, it also adds the word "only" to its paraphrase of the section to make it appear as if stays cannot be granted unless they are granted pursuant to that section.  To the contrary, the Patent Act "does not provide for a stay of court proceedings because it 'is believed by the committee that stay provisions are unnecessary in that such power already resides with the Court.'" *Ethicon,* 849 F.2d at 1426 (citing H.Rep. 1307(I), 96th Cong., 2d Sess. 4, *reprinted in* 1980 U.S.Code Cong. & Admin. News 6460, 6463).  Textron's interpretation of 35 U.S.C. § 318 would deny this Court "its inherent power to manage [its] dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination." *Ethicon,* 849 F.2d at 1426-27 (internal citations omitted).  Such an interpretation is not only incorrect, it misleads this Court.

As such, Textron's arguments that the instant Motion for Stay is "premature," should be set aside as irrelevant, incorrect, and misleading.

### III.   CONCLUSION

For the foregoing reasons, Club Car's motion to stay this litigation pending reexamination of the patent-in-suit should be granted.

Dated this 6th day of January, 2010.

**MICHAEL BEST & FRIEDRICH LLP**

By:   S/ THOMAS S. REYNOLDS II
Thomas S. Reynolds II
Jeremy Adelson
100 East Wisconsin Avenue
Suite 3300
Milwaukee, WI  53202-4108
Phone:  414.271.6560
Email: tsreynolds@michaelbest.com
         jadelson@michaelbest.com

And

A. Montague Miller
453 Greene Street
P. O. Box 2426
Augusta, GA 30903-2426
Phone: 706-722-0771
Facsimile: 706-722-7028
Email: mmiller@thefirm453.com

Attorneys for Defendant  CLUB CAR, INC.

**CERTIFICATE OF SERVICE**

I hereby certify that on January 6, 2010, I electronically filed the foregoing with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

Michael N. Loebl
Sonja R. Tate
FULCHER HAGLER LLP
One 10th Street, Suite 700
Augusta, Georgia 30901
(706) 724-0171

And

Robert M. Isackson
ORRICK, HERRINGTON & SUTCLIFFE LLP
666 Fifth Avenue
New York, New York 10103
(212) 506-5000

Valerie M. Goo
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street
Suite 3200
Los Angeles, CA 90017
(213) 629-2020

Stacey E. Stillman
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
(650) 614-7400

Attorneys for Plaintiffs
E-Z-GO (a division of Textron Inc.) and
TEXTRON INNOVATIONS INC.

By: S/ THOMAS S. REYNOLDS II
Thomas S. Reynolds II
100 East Wisconsin Avenue
Suite 3300
Milwaukee, WI 53202-4108
Phone: 414.271.6560
Email: tsreynolds@michaelbest.com